# SECTION 8

## DISSOLUTION AND LIQUIDATION

8.1 ***Dissolving Events***. The Company shall be Dissolved upon the occurrence of any of the following events:

(a) Expiration of the Company's Term;

(b) Failure of the Company to have at least one (1) Managing Member;

(c) Permanent cessation of the Company's business;

(d) An election to dissolve the Company executed by Seventy Five Percent (75%) of Members; or

(e) Any other event which results in a mandatory Dissolution of the Company under the Act.

To the maximum extent permitted by the Act, the Members hereby waive their rights to seek a judicial dissolution of the Company for reasons other than those listed in clauses (a) through (d) of this Section 8.1.

8.2 ***Winding Up and Liquidation***.

(a) Upon Dissolution of the Company, the Liquidating Member shall promptly wind up the affairs of, liquidate and Terminate the Company. In furtherance thereof, the Liquidating Member shall: (i) have all of the administrative and management rights and powers of the Managing Members (including the power to bind the Company); and (ii) be reimbursed for Company expenses it incurs. Following Dissolution, the Company shall sell or otherwise dispose of assets determined by the Liquidating Member to be unsuitable for distribution to the Members, but shall engage in no other business activities except as may be necessary, in the reasonable discretion of the Liquidating Member, to preserve the value of the Company's assets during the period of winding-up and liquidation. In any event, the Liquidating Member shall use its reasonable best efforts to prevent the period of winding-up and liquidation of the Company from extending beyond the date which is two (2) years after the Company's date of Dissolution.

(b) At the conclusion of the winding-up and liquidation of the Company, the Liquidating Member shall: (i) designate one (1) or more Persons to hold the books and records of the Company (and to make such books and records available to the Members on a reasonable basis) for not less than six (6) years following the termination of the Company under the Act; and (ii) execute, file and record, as necessary, a certificate of termination or similar document to effect the termination of the Company under the Act and other applicable laws.

(c) Distributions to the Members in liquidation may be made in cash or in kind, or partly in cash and partly in kind, as determined by the Liquidating Member. Distributions in kind shall be valued at

22

ATF0965

Fair Market Value as determined by the Liquidating Member in accordance with the provisions of Section 6.14 and shall be subject to such conditions and restrictions as may be necessary or advisable in the reasonable discretion of the Liquidating Member to preserve the value of the property so distributed or to comply with applicable law.

(d)     The Profits and Losses of the Company during the period of winding-up and liquidation shall be allocated among the Members in accordance with the provisions of Section 4.  If any property is to be distributed in kind, the Capital Accounts of the Members shall be adjusted with regard to such property in accordance with the provisions of Section 4.1(d).

(e)     The assets of the Company (including proceeds from the sale or other disposition of any assets during the period of winding-up and liquidation) shall be applied as follows:

(i)     First, to repay any indebtedness of the Company, whether to third parties or the Members, in the order of priority required by law;

(ii)     Next, to any reserves which the Liquidating Member reasonably deems necessary for contingent or unforeseen liabilities or obligations of the Company (which reserves when they become unnecessary shall be distributed in accordance with the provisions of clause (iii), below); and

(iii)     Next, to the Members in proportion to their respective positive Capital Account balances (after taking into account all adjustments to the Members' Capital Accounts required under Section 8.2(d)).

(f)     Except as otherwise specifically provided in this Agreement, a Member shall have no liability to the Company or to any other Member in respect of a negative balance in such Member's Capital Account during the term of the Company or at the conclusion of the Company's Termination.

## SECTION 9

## LIABILITY AND INDEMNIFICATION

9.1     *Liability*.  Except as otherwise specifically provided in this Agreement, no Indemnified Person shall be personally liable for the return of any contributions made to the capital of the Company by the Members or the distribution of Capital Account balances.  Except to the extent that Material Misconduct on the part of an Indemnified Person shall have given rise to the matter at issue, such Indemnified Person shall not be liable to the Company or the Members for any act or omission concerning the Company.  Without limitation on the preceding sentence, except to the extent that such action constitutes Material Misconduct, an Indemnified Person shall not be liable to the Company or to any Member in consequence of voting for, approving, or otherwise participating in the making of a distribution by the Company pursuant to Section 5 or 8.  An Indemnified Person shall not be liable to the Company or the Members for losses due to the acts or omissions of any other Person serving as an independent contractor, employee or other agent of the Company unless such Indemnified Person was or should have been directly involved with the selection, engagement or supervision of such Person and the actions or omissions of such Indemnified Person in connection therewith constituted Material Misconduct.

ATF0966

9.2 *Indemnification.*

(a) Except to the extent that Material Misconduct on the part of an Indemnified Person shall have given rise to the matter at issue, the Company shall indemnify and hold such Indemnified Person harmless from and against any loss, expense, damage or injury suffered or sustained by such Indemnified Person by reason of any actual or threatened claim, demand, action, suit or proceeding (civil, criminal, administrative or investigative) in which such Indemnified Person may be involved, as a party or otherwise, by reason of its actual or alleged management of, or involvement in, the affairs of the Company. This indemnification shall include, but not be limited to: (i) payment as incurred of reasonable attorneys' fees and other out-of-pocket expenses incurred in investigating or settling any claim or threatened action (where, in the case of a settlement, such settlement is approved by the Managing Members), or incurred in preparing for, or conducting a defense pursuant to, any proceeding up to and including a final non-appealable adjudication; (ii) payment of fines, damages or similar amounts required to be paid by an Indemnified Person; and (iii) removal of liens affecting the property of an Indemnified Person.

(b) Indemnification payments shall be made pursuant to this Section 9.2 only to the extent that the Indemnified Person is not entitled to receive (or will not in any event receive) from a third party equal or greater indemnification payments in respect of the same loss, expense, damage or injury. In the event, however, that the Managing Members determine that an Indemnified Person would be entitled to receive indemnification payments from the Company but for the operation of the preceding sentence, the Managing Members may cause the Company to advance indemnification payments to the Indemnified Person (with repayment of such advance to be secured by the Indemnified Person's right to receive indemnification payments from the applicable third party).

(c) As a condition to receiving an indemnification payment pursuant to this Section 9.2, an Indemnified Person shall execute an undertaking in form and substance acceptable to the Managing Members providing that, in the event it is subsequently determined that such Person was not entitled to receive such payment (whether by virtue of such Person's Material Misconduct or otherwise), such Person shall return such payment to the Company promptly upon demand therefor by any Member.

(d) Notwithstanding the foregoing provisions of this Section 9.2, the Company shall be under no obligation to indemnify an Indemnified Person from and against any reduction in the value of such Person's interest in the Company that is attributable to losses, expenses, damages or injuries suffered by the Company or to any other decline in the value of the Company's assets.

(e) The indemnification provided by this Section 9.2 shall not be deemed to be exclusive of any other rights to which any Indemnified Person may be entitled under any agreement, as a matter of law, in equity or otherwise.

9.3 *Contribution.* In the event that, notwithstanding the provisions of Sections 3.8 and 9.1, two (2) or more Members share joint and several personal liability:

(a) In connection with any action, omission or situation that would entitle such Members to indemnification pursuant to the provisions of Section 9.2 but for the fact that such action, omission or situation included or constituted Material Misconduct on the part of such Members; or

24

ATF0967

(b) In connection with any action, omission or situation that entitles such Members to indemnification pursuant to the provisions of Section 9.2, but the assets of the Company are insufficient to provide for the full amount of indemnification to which such Members are entitled or their entitlement to indemnification is otherwise unenforceable; then

(c) Such Members shall share the burden of the liability in a manner that is fair and reasonable as determined by such Members or, if they are unable to agree within a reasonable period of time, by an arbitrator selected and acting in accordance with the provisions of Section 10.12.

## SECTION 10

## GENERAL PROVISIONS

10.1 ***Meetings***. Meetings of the Members may be called as provided in this Agreement as well as by the Managing Members. Any such meeting shall be held at a reasonable time and place (including a reasonable site within the same county as the Principal Office) on not less than ten (10) nor more than sixty (60) days' notice. Reasonable accommodation shall be made for any Member that elects to attend a meeting via telephonic or similar means pursuant to which all Persons attending the meeting can hear one another. No action may be taken at a meeting of the Members without the consent of that number or percentage of the Members whose consent is otherwise required for such action under this Agreement. Except as specifically provided in this Agreement, there shall be no requirement of annual or periodic meetings of the Company's members or managers within the meaning of the Act.

10.2 ***Action Without a Meeting of All Members***.

(a) Any action of the Members (or a subset thereof) may be taken by written consent of that number or percentage of the Members whose consent is otherwise required for such action under this Agreement. The fact that a Member has not received notice of an action taken by written consent, or taken at a meeting actually held, shall not invalidate such action so long as it was taken with the consent of that number or percentage of the Members whose consent is otherwise required for such action under this Agreement; provided, however, that no consent, election, approval or other action of any or all the Non-Managing Members that has the effect of limiting the power or authority of the Managing Members shall be effective until the Managing Members have received notice thereof.

(b) A Member may authorize another Person to vote or otherwise act on its behalf through a written proxy or power of attorney.

(c) In order to facilitate the determination of whether any action of the Members (or a subset thereof) has been taken by or with the consent of the requisite number or percentage of the Members under this Agreement, the Managing Members may adopt, from time to time upon not less than ten (10) days' notice to the Members, reasonable procedures for establishing the Members of record entitled to vote, consent or otherwise take action on any matter; provided, however, that any date as of which Members of record is determined shall not precede the date of the related action by more than sixty (60) days.

ATF0968

10.3    ***Entire Agreement***.  This Agreement contains the entire understanding among the Members and supersedes any prior written or oral agreement between them respecting the Company.  There are no representations, agreements, arrangements, or understandings, oral or written, among the Members relating to the Company which are not fully expressed in this Agreement.

10.4    ***"JA Industries" Name and Mark***.  Notwithstanding any provision of this Agreement to the contrary, the Members acknowledge that: (i) the "JA Industries" names and marks are the property of the Company; (ii) no other Member shall, by virtue of its ownership of an Interest, hold any right, title or interest in or to such name and mark; and (iii) following the Dissolution and liquidation of the Company, all right, title and interest in and to such names and marks shall be held nonexclusively by the Members.

10.5    ***Amendments***.

(a)    Except as otherwise provided in this Section 10.5, this Agreement may be amended, in whole or in part, only through a written amendment executed by a Two-Thirds-Interest of the Members (which Two-Thirds Interest shall include at least a Majority-In-Interest of the Managing Members).  Each Member shall be promptly notified of any amendment to this Agreement made pursuant to this Section 10.5; provided, however, that a duly adopted amendment shall be effective as of the date and time specified therein without regard to whether any other Members have been given notice thereof.

(b)    An amendment to any provision of this Agreement that calls for a higher level of approval of the Members or the approval of certain specified Members shall, in addition to the execution percentage set forth in Section 10.5(a), require the same form of approval as is set forth in such provision.  Any amendment to this Section 10.5 shall require the unanimous consent of the Members.

(c)    Except with regard to amendments otherwise specifically required under this Agreement, there shall be no amendment to this Agreement which would have a material adverse effect upon a Member unless the amendment: (i) is consented to by such Member or (ii) by its terms applies to all Members.  Subject to Section 3.1(b), there shall be no amendment that: (i) increases a Member's obligation to make capital contributions to the Company or (ii) imposes personal liability upon a Member for any debts or obligations of the Company unless, in each case, the amendment is consented to by such Member.

(d)    If an Assignee holds an economic interest in the Company in respect of which there are (but for the operation of this Section 10.5(d)) no corresponding amendment consent rights held by any Person (*e.g.*, in the case of an economic interest acquired by the Assignee pursuant to a transaction or event in which amendment consent rights are extinguished, such as upon the death, Dissolution or Termination of a Member), then, solely with regard to an amendment to this Agreement that would materially reduce or diminish such economic interest, the Assignee shall have the same consent rights in respect of such amendment as would have been held by the assignor Member of such economic interest if the assignor Member had continued as a Member and continued to hold such economic interest (but no other economic interest in the Company). Except as set forth in this Section 10.5(d), an Assignee shall not, solely by virtue of its status as such, have any right to consent or withhold consent in respect of an amendment to this Agreement.

(e)    Notwithstanding the foregoing provisions of this Section 10.5, the Managing Members may, without the consent of the other Members, amend this Agreement in any manner determined by the Managing Members to be necessary or advisable to reflect the admission of an Additional Member, comply with applicable law, supply a missing term or provision, or resolve an ambiguity in the existing terms and provisions of this Agreement.  The Managing Members shall not have the authority under this

ATF0969

Section 10.5(e) to amend this Agreement in a manner that is materially adverse to any Member; provided, however, that a Member's right to object to an amendment pursuant to this Section 10.5(e) on the grounds that such amendment is materially adverse to such Member shall expire at the Close of Business on the thirtieth (30th) day following notice to such Member of such amendment.

10.6    **Governing Law**.  The interpretation and enforceability of this Agreement and the rights and liabilities of the Members as such shall be governed by the laws of the State of Nevada. To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

10.7    **Severability**.  In the event that any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be deemed severed from the remainder of this Agreement and replaced with a valid and enforceable provision as similar in intent as reasonably possible to the provision so severed, and shall not cause the invalidity or unenforceability of the remainder of this Agreement.

10.8    **Counterparts; Binding upon Members and Assignees**.  This Agreement may be executed in any number of counterparts and, when so executed, all of such counterparts shall constitute a single instrument binding upon all parties notwithstanding the fact that all parties are not signatory to the original or to the same counterpart.  In addition, to the maximum extent permitted by applicable law and without limitation on any other rights of the Members or the Company, a non-Member shall become bound as an Assignee under this Agreement if such Person holds an interest in the Company and seeks to exercise, assert, confirm or enforce any of its rights as an Assignee under this Agreement or the Act.

10.9    **Survival of Certain Obligations**.  Except as specifically provided in this Agreement, or to the extent specifically approved by the Managing Members (which approval may be withheld by the Managing Members in their sole and absolute discretion), a Member shall continue to be subject to all of its obligations to make capital contributions or other payments arising under this Agreement (including obligations attributable to a breach of this Agreement), as well as its obligations to maintain the confidentiality of information pursuant to Section 6.12 and to provide information pursuant to Section 6.13, without regard to any Transfer of all or any portion of such Member's Interest or any event that terminates such Member's status as such. Each Member's Capital Commitment shall terminate at the time of the final termination of the Company under the Act, but such termination shall not release a Defaulting Member from obligations arising under Section 3.4.

10.10   **No Third Party Beneficiaries**.  Except with regard to the Company's obligation to Indemnified Persons as set forth in Section 9 and as otherwise specifically provided in this Agreement, the provisions of this Agreement are not intended to be for the benefit of or enforceable by any third party and shall not give rise to a right on the part of any third party to (i) enforce or demand enforcement of a Member's Capital Commitment, obligation to return distributions, or obligation to make other payments to the Company as set forth in this Agreement or (ii) demand that the Company or the Managing Members issue any capital call.

10.11   **Notices, Consents, Elections, Etc**.  All notices, consents, agreements, elections, amendments, and approvals provided for or permitted by this Agreement or otherwise relating to the Company shall be in writing and signed copies thereof shall be retained with the books of the Company.

(a)    **Notice to Members**.  Except as otherwise specifically provided in this Agreement, notice to a Member shall be deemed duly given upon the earliest to occur of the following: (i) personal delivery to such Member, to the address set forth on Schedule A for such Member, or to any other address

27

ATF0970

which such Member has provided to the Company for purposes of this Section 10.11(a); (ii) the Close of Business on the third day after being deposited in the United States mail, registered or certified, postage prepaid and addressed to such Member at the address set forth on Schedule A for such Member, or at any other address which such Member has provided to the Company for purposes of this Section 10.11(a); (iii) the Close of Business on the first business day after being deposited in the United States with a nationally recognized overnight delivery service, with delivery charges prepaid and addressed as provided in the preceding clause; or (iv) actual receipt by such Member via any other means (including public or private mail, electronic mail, facsimile, telex or telegram); provided, however, that notice sent via electronic mail shall be deemed duly given only when actually received and opened by the Member to whom it is addressed.

(b)     *Notice to the Company*.  Notice to the Company shall be deemed duly given when clearly identified as such and duly given to the Managing Members in accordance with the procedures set forth in Section 10.11(a).

10.12  *Dispute Resolution*.  **For any and all disputes arising out of or related to this Agreement, any Member's/party's performance of its obligations herein, the construction and/or interpretation of the terms of this Agreement, or any party's post-termination obligations arising out of or related to this Agreement, the parties agree to first attempt to resolve the matter through informal mediation.  In the event the mediation does not resolve the parties' dispute, the parties agree to submit to binding arbitration in Las Vegas, Nevada.  Arbitration under this Agreement shall be conducted by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules.  The arbitrator's award shall be binding.  Prior to the conclusion of the arbitration, each party shall equally bear its own costs associated with arbitration; however, the prevailing party shall be entitled to an award of reasonable attorney's fees and a reimbursement of its costs.  Regardless of the parties' agreement to arbitrate under this Section 10.12, either party may seek appropriate equitable relief outside the arbitral forum (*i.e.* in a court of competent jurisdiction).**

_____        _____

**INI**        **INI**

10.13  *Remedies for Breach of this Agreement*.

(a)     *General*.  Except as otherwise specifically provided in this Agreement, the remedies set forth in this Agreement are cumulative and shall not exclude any other remedies to which a Person may be lawfully entitled.

(b)     *Specific Performance*.  Without limiting the rights and remedies otherwise available to the Company or any Member, each Member hereby: (i) acknowledges that the remedy at law for damages resulting from its default under Sections 3.4, 6.5, 6.12, 6.13, and 10.12 is inadequate; and (ii) consents to the institution of an action for specific performance of its obligations in the event of such a default.

(c)     *Penalty Provisions*.  Each Member hereby acknowledges that certain provisions of this Agreement (including Section 3.4) provide for specified penalties in the event of a breach of this Agreement by a Member.  Each Member hereby agrees that the penalty provisions of this Agreement are fair and reasonable and, in light of the difficulty of determining actual damages, represent a prior agreement among the Members as to appropriate liquidated damages.

ATF0971

(d)  ***Exercise of Discretion by the Managing Members***.  In determining what action, if any, shall be taken against a Member in connection with such Member's breach of this Agreement, the Managing Members shall seek to obtain the best result (as determined by the Managing Members in their sole and absolute discretion) for the Company and the other Members.  Each Member hereby specifically agrees that, in the event such Member violates the terms of this Agreement, such Member shall not be entitled to claim that the Company or any of the other Members are precluded, on the basis of any fiduciary or other duty arising in respect of such Member's status as such, from seeking any of the penalties or other remedies permitted under this Agreement or applicable law.

10.14  ***Currency***.  The functional currency of the Company shall be United States dollars.  All cash capital contributions shall be made in dollars and, to the extent reasonably practicable, the books, records, reports and accounts of the Company shall be stated in dollars.  No Member shall be entitled to receive cash distributions from the Company other than in dollars.  In the event that it is necessary or convenient for Company purposes to apply an exchange rate between different currencies, the exchange rate shall be determined by the Managing Members using such publicly available indices as they shall select in their reasonable discretion.

10.15  ***Timing***.  All dates and times specified in this Agreement are of the essence and shall be strictly enforced.  Except as otherwise specifically provided in this Agreement, all actions that occur after the Close of Business on a given day shall be deemed for purposes of this Agreement to have occurred at 9:00 a.m. the following day.  In the event that the last day for the exercise of any right or the discharge of any duty under this Agreement would otherwise be a day that is not a business day, the period for exercising such right or discharging such duty shall be extended until the Close of Business on the next succeeding business day.

10.16  ***Miscellaneous***.  No failure or delay by any party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof; any actual waiver shall be contained in a writing signed by the party against whom enforcement of such waiver is sought.  This Agreement shall not be construed for or against any party by reason of the authorship or alleged authorship of any provisions hereof or by reason of the status of the respective parties.  Each Member hereby specifically consents to the selection of all other Members admitted to the Company pursuant to the terms of this Agreement.

ATF0972

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

MANAGING MEMBERS:

By: _Pablo Jimenez_

Name: Pablo J. Jimenez
Title: Manager

ATF0973

## SCHEDULE A

## MEMBER INFORMATION

| Name and Contact Information | Allocation Percentage | Capital Commitment |
| --- | --- | --- |
| MANAGING MEMBER: | | |
| Pablo J. Jimenez<br>7390 Eastgate Rd. Suite 150<br>Henderson, NV 89011 | 100% | |

31

ATF0974

Hello Jonathan!

Attached is the email and letter from our new property manager.

Please call Paul on his cellphone with any questions.

Happy Friday and have a great weekend!

Best Regards

Monique Jimenez

# JA Industries LLC

███████████████

**Henderson, NV 89002**

███████████████

----- Forwarded Message -----
**From:** Sean Mullens <sean.mullens@nac-re.com>
**To:** jaindustriesllc@yahoo.com <jaindustriesllc@yahoo.com>
**Sent:** Friday, April 17, 2020, 03:33:22 PM PDT
**Subject:** Letter of Authorization

Paul, please see the attached and let me know if you need anything additional.

Thank you,

**Sean M. Mullens**

Property Manager

NV License # S.0182616

North American Commercial®

9079 W Post Rd, Suite 120

Las Vegas, NV 89148

(702) 623-8000 main

(702) 623-5656 fax

█████████ cell

[sean.mullens@nac-re.com](mailto:sean.mullens@nac-re.com)

[www.nac-re.com](http://www.nac-re.com)



This email is not a solicitation for business. Any offers contained within this email are for discussion purposes and should not be perceived or construed as a contract for a formal agreement. This email and any attachments contain herein are confidential information that may be legally privileged. All logos, artwork, photos and information are property of North American Commercial and may not be utilized, saved, sent to unauthorized individuals or duplicated without prior written consent. Furthermore, the sender of this email is not qualified to provide legal, financial, or tax advice and any information contained herein shall be used for informational purposes only which shall not be relied on without consulting a professional.



**NORTH AMERICAN**
C O M M E R C I A L

To Whom It May Concern:

Please be advised that JA Industries, LLC has obtained all permissions from 10500 Family Limited Partnership (owner and Landlord) to operate as a designer, fabricator and manufacturer of firearms within the premises located at 249 Elliott Road, Suite 1.

Should you have any questions regarding this consent, please feel free to contact me via email at: sean.mullens@nac-re.com or via phone at 702-683-2000 x███

Sincerely,

Sean M. Mullens
Property Manager
NV License # S.0182616

North American Commercial®
9079 W Post Rd, Suite 120
Las Vegas, NV 89148
(702) 623-8000 main
(702) 623-5656 fax
████████ cell
sean.mullens@nac-re.com
www.nac-re.com

| From: | Paul Jimenez |
|---|---|
| To: | Han, Jonathan J. |
| Subject: | Re: FFL application supporting docs |
| Date: | Wednesday, April 22, 2020 1:31:38 PM |
| Attachments: | JA Industries LLC Signed FFL Regulations.pdf |
| | image003.jpg |
| | image004.jpg |

# JA Industries LLC

██████████████████

**Henderson, NV 89002**

███████████████

On Wednesday, April 22, 2020, 09:29:49 AM PDT, Han, Jonathan J. ███████████████████ wrote:

Good morning, Paul and Monique,

Attached is the acknowledgement that we do every inspection. Can you print for the inspection? We will have Paul check the boxes and sign it.

Thank you!



### *Jonathan J. Han*

Industry Operations Investigator

Bureau of Alcohol, Tobacco, Firearms and Explosives

San Francisco Field Division/ Las Vegas III Field Office

Office: ████████████

Cell: ████████████

**From:** Paul Jimenez <jaindustriesllc@yahoo.com>
**Sent:** Thursday, April 16, 2020 5:25 PM
**To:** Han, Jonathan J. ██████████████████
**Subject:** Re: FFL application supporting docs

ATF0978

Hey Jonathan!

We are all safe and well!  Kids are giving me more grey hair but other than that no complaints.

I am attaching the documents I have so far.  I am just waiting on Item 2, the permission letter from the property manager.  Paul spoke with her yesterday and left a voicemail today.

Please call Paul on his cellphone ███████████ if you have any questions or need anything else.  As soon as he gets the letter I will send it over.

Have a great evening.

Best Regards,

Monique Jimenez

# JA Industries LLC

████████████████████

## Henderson, NV 89002

████████████

On Thursday, April 16, 2020, 12:35:43 PM PDT, Han, Jonathan J. ████████████████> wrote:

Thank you monique! Hope everything is well☺.

**Jonathan J. Han**

Industry Operations Investigator

Bureau of Alcohol, Tobacco, Firearms and Explosives

Office: ██████████

Cell: ████████

---

**From:** Paul Jimenez <jaindustriesllc@yahoo.com>
**Sent:** Thursday, April 16, 2020 12:34 PM
**To:** Han, Jonathan J. <████████████████>
**Subject:** Re: FFL application supporting docs

Thank you for the email.  I will gather what I can and call you if i have any questions.

Best Regards,

Monique Jimenez

# JA Industries LLC

████████████████

## Henderson, NV 89002

████████████

On Thursday, April 16, 2020, 11:12:40 AM PDT, Han, Jonathan J. ████████████████> wrote:

Hi, Paul,

I hope this email find you doing well.  I reviewed the application and there need to be few corrections on the application.  We will go over the application together when we do he telephone interview when we are ready.  Please have a copy available or I can try to send you the one you submitted.

Here are the list of documents you can prepare and send to me for the inspection:

1.  LLC ownership document (statement of ownership or LLC document showing percent ownership)
2.  Property owner permission letter
3.  EIN document form IRS
4.  Fictitious Firm Name certificate for trade name if you intend on using one
5.  Any local business licenses.

Please give me a call anytime if you have any questions. We can set up a telephone interview part when you are free Paul.

Thank you!

 **Jonathan J. Han**

Industry Operations Investigator

Bureau of Alcohol, Tobacco, Firearms and Explosives

San Francisco Field Division/ Las Vegas III Field Office

Office: █████████

Cell: █████████

| Licensee Name: JA Industries LLC | UI Number: |
|---|---|

| | TOPIC | 18 U.S.C., 27 CFR & Other References | Page Number |
|---|---|---|---|
| **1.** | **REQUIRED RECORDS & REPORTS** | | |
| | Acquisition and Disposition Record | 478.122, 478.123 & 478.125(e) | 62, 63 & 65 |
| | Computerized Acquisition and Disposition Record | ATF Ruling 2016-1 | 170 |
| | Transaction Record/ATF F 4473** | 478.124 | 63-64 |
| | Identification Document | 478.11 | 37 |
| | Report of Multiple Handgun Sales/ATF F 3310.4** | 478.126a | 67 |
| | Report of Multiple Rifle Sales/ATF F 3310.12** | 923(g)(5)(A) & Demand Letter 3 | 22 |
| | **(CA, AZ, NM, and TX FFLs ONLY)** | | |
| | Reporting Thefts or Losses/ATF F 3310.11** | 478.39a | 45 |
| | Retention of Records | 478.129 | 68-69 |
| **2.** | **CONDUCT OF BUSINESS** | | |
| | Firearm Frame or Receiver | 478.11 | 37 |
| | NICS Requirements | 478.102 & 478.131 | 53-54 & 68 |
| | | www.fbi.gov/hq/cjisd/nics/index.htm | |
| | Secure Gun Storage or Safety Device | 921(a), 922(z), & 923(d)(1)(G) | 10,15-16 & 19-20 |
| | Child Safety Lock Act | 18 U.S.C. 922(z) | 19 |
| | Sales or Deliveries between Licensees | 478.94 & 478.95 | 51 |
| | FFL EZ Check | www.atfonline.gov/fflezcheck | |
| | Gun Show Guidelines** | 478.100 | 53 |
| | Out of State/Mail Order and Internet Sales | 478.96 | 51-52 |
| | Prohibited Sales and Deliveries | 478.99 | 52-53 |
| | Ammunition - Age Requirements for Handgun Ammunition | 478.99(b)(1) | 52 |
| | Prohibited Persons Working for FFL (Actual & Constructive Poss.) | 18 U.S.C. 2(a), 922(g)/(n) | 10-13 |
| | Sales to Law Enforcement Officers | 478.134 | 68-69 |
| | Youth Handgun Safety Act- Sales of Handguns/Poster and Notices** | 478.103 | 54-56 |
| | Obliterated Serial Number | 478.34 | 44 |
| | Short Barreled Rifle & Shotgun | 478.11 | 39 |
| **3.** | **LICENSES** | | |
| | Engaged in the Business | 478.11 | 36 |
| | Correction of Error | 478.48 | 47 |
| | Posting of License | 478.91 | 50 |
| | Renewal/Duration | 478.45 & 478.49 | 46 & 47 |
| | Premises Covered | 478.50 | 47 |
| | Reporting Changes of Address / ATF F 5300.38** | 478.52 | 48 |
| | Reporting Changes in Trade Name | 478.53 | 48 |
| | Reporting Changes of Control | 478.54 | 48 |
| | Discontinuance of Business | 478.57 & 478.127 | 48 & 67 |
| **4.** | **MISCELLANEOUS PROVISIONS** | | |
| | Right of Entry and Examination | 478.23 | 40 |
| | Tracing Request from ATF | 478.25a | 41 |
| | "Straw" Purchase | 478.128 | 67-68 |
| | Curios or Relics / ATF P 5300.11** | 478.11 | 36 |
| | Antique Firearm / Muzzleloader (Conversion Exceptions) | 478.11 & General Info. # 7 | 35 & 185 |
| | Consignment of Firearms | 478.124(a), Q&A Section G22, | 63 & 204 |
| | Personal Firearms / ATF P 3312.8** | 478.125a | 66-67 |
| | Firearm Transportation | 478.38 | 44 |
| | Theft/Loss Prevention for Licensees / ATF P 5380.1** | Loss Prevention for Firearms Retailers / FFL Alert Notice | |
| **5.** | **STATE LAWS AND LOCAL ORDINANCES** | | |
| | Compliance with State Law Publication / ATF P 5300.5** | 478.24 | 40-41 |
| | Review of basic requirements including additional licenses, waiting periods, concealed carry permits, and firearms permits. | | |
| **6.** | **GUNSMITH ACTIVITIES** N/A ☐ | | |
| | Gunsmithing Definition | 478.11 - Engaged in the business (d) | 36 |
| | Gunsmith Recordkeeping | 478.124(a) & .125(e), ATF Ruling 77-1 | 63 & 65, 124 |
| | Return of Repaired Firearm | 478.124(a), Q&A Section J | 63 & 206 |
| | Firearms & Ammunition Excise Tax-Contact Tax & Trade Bureau | www.ttb.gov/firearms | 877-882-3277 |

** Provide a copy of the form or publication (or refer to www.atf.gov for an e-copy) and explain the requirements for completing the forms.        Page 1 of 2

ATF0982

| Licensee Name: JA Industries LLC | UI Number: |
|---|---|

| TOPIC | 18 U.S.C., 27 CFR & Other References | Page Number |
|---|---|---|
| **7. FIREARMS & AMMUNITION MANUFACTURERS** N/A | | |
| Manufacturer Definition | 478.11 and 479.11 | 37 & 81 |
| Markings | 478.92 , 479.102, Rulings 9-5, 12-1 & 13-3 | 50-51 & 89-90 |
| Records | 478.123 & 478.125(i), ATF Ruling 16-3 | 63-66 & 156 |
| Annual Firearms Manufacturing & Exportation Report / ATF F 5300.11** | | |
| Firearms & Ammunition Excise Tax-Contact Tax & Trade Bureau | www.ttb.gov/firearms | 877-882-3277 |
| NFA Firearms | 479.103 | 90 |
| Special Occupational Tax / ATF F 5630.7** | 479.31-479.37 | 82-84 |
| **8. NFA DEALER** N/A | | |
| Authorized Operations | ATF Ruling 76-22 | 124 |
| NFA Firearms | Part 479 | 78-97 |
| General Information / ATF P 5320.8** | Q&A Section N | 208-210 |
| Forms used to transfer NFA items | NFA Forms 1,2,3,4 & 5** | |
| Special Occupational Tax / ATF F 5630.7** | 479.31-479.37 | 82-84 |
| **9. IMPORTER** N/A | | |
| Importer Definition | 478.11 | 37 |
| Importation Acquisition & Disposition Record | 478.122 & 478.125(i), ATF Ruling 11-1 | 62 &160 |
| Markings | 478.92/112(d)(2) & 479.102, Ruling 13-3 | 50/57 & 89-90 |
| ATF Forms 6 and 6A** | 478.112 | 56-57 |
| Firearm & Ammunition Excise Tax-Contact Tax & Trade Bureau | www.ttb.gov/firearms | 877-882-3277 |
| NFA Firearms | 479.111-479.113 | 91-92 |
| **10. EXPORTATION** N/A | | |
| Arms Export Control Act of 1976 | 22 U.S.C. 2778 | 95-106 |
| **11. SCHOOL ZONE** N/A | ATF P 5310.1** | |

If the FFL's premises falls within a school zone, firearms in possession of FFL's customers must be unloaded and placed in a locked container or in a locked firearms rack that is on a motor vehicle. Also, the FFL should use specific means to ensure that their customers are not in violation of 18 U.S.C. 922(q). For example, the FFL could advise the customer of State permits/license options or the use of lockable containers. Refer to 18 U.S.C. 921(a)25 on page 7 for the full definition of "School Zone".

**12. GENERAL QUESTIONS AND ANSWERS**                                        191-217

Investigator ___Jonathan Han___ explained this information to me on __4_/_22_/_20__ and answered my questions regarding this information. I have received a copy of this for my records as a reference. I understand that this is only a general overview of the regulations and that I will be responsible for familiarizing myself with all of the laws and regulations governing my licensed firearms business.

_Pab b fimmy_      _4/22/2020_
Applicant's/Licensee's Signature and Date                 ATF Investigator Signature and Date

**Federal Firearms Regulations Reference Guide:** www.atf.gov/file/11241/download

| | | |
|---|---|---|
| | Federal Firearms Licensing Center | 866-662-2750 |
| **ATF Website: www.atf.gov** | Firearms Tracing Center | 800-788-7133 |
| **ATF Office Contact #:** | Firearms Imports Branch | 304-616-4550 |
| | National Firearms Act (NFA) Branch | 304-616-4500 |
| **REPORTING THEFTS:** 888-930-9275 | Firearms and Ammunition Technology Branch | 304-260-1699 |
| 800-800-3855 | Firearms Industry Programs Branch | 202-648-7190 |
| | Distribution Center / Forms | 240-828-5316 |

*Revised March 2019*

** Provide a copy of the form or publication (or refer to www.atf.gov for an e-copy) and explain the requirements for completing the forms.        Page 2 of 2

ATF0983